IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMBER C. HOPPER, Individually; § <br> as Personal Representative for the Estate of § <br> DANIEL HOPPER II, Deceased; and § <br> as Next Friend for Two Minor Children § <br>     Plaintiffs § <br> § <br> Vs. § <br> § <br> § <br> *M/V UBC SINGAPORE,* her equipment and § <br> appurtenances, etc., *in rem,* § <br>     Defendant/Third-Party Plaintiff § <br> § <br> vs. § <br> § <br> BRIAN HASTEN, Individually and d/b/a § <br> HASTEN YACHT REPAIR & BOAT § <br> DELIVERIES, and TEXAS MOORING, § <br> L.L.C., § <br>     Third-Party Defendants. § | C.A. NO. 4:09-cv-01223 <br><br> IN ADMIRALTY – RULE 9(h) |

**MOTION TO EXCLUDE EXPERT
TESTIMONY OF KENNETH MCCOIN, PH.D.**

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW Southern Princess Shipping Company Limited *in personam* and under its claim of owner of the M/V UBC SINGAPORE, ("Southern Princess"), and files this Motion to Exclude the Testimony of Dr. Kenneth McCoin by Plaintiff Amber Hopper ("Plaintiff") because:

- ♦      The data that Dr. McCoin relied upon, as well as his conclusions, is nothing more than *ipse dixit*, and accordingly has no evidentiary value; and,

- ♦      Dr. McCoin's testimony is not reliable under Rule 702 because his methodology does not meet the Fifth Circuit's standard for calculating future lost wage damages as set forth in *Culver II*.

In support of the foregoing, Southern Princess respectfully shows the Court the following:

# I.
# **BACKGROUND AND INTRODUCTION**

1.	The present lawsuit arises out of the drowning death of boat mechanic Daniel Hopper II ("Hopper" or "Decedent") in the Houston Ship Channel on April 20, 2009. On April 23, 2009, Amber C. Hopper (Decedent's widow), individually and as personal representative of the Estate of Daniel Hopper II, Deceased, and as next friend for two minor children, filed the underlying action, alleging that Decedent's death was the result of an alleged collision between the UBC SINGAPORE and the TXM-16.[1]

2.	Plaintiff designated Dr. Kenneth McCoin as an economic expert for the purposes of offering opinion testimony of Plaintiff's past and future economic damages. Dr. McCoin submitted a report dated December 23, 2009 and was presented for deposition on February 25, 2010.

3.	All of Dr. McCoin's calculations are based on "his understanding" that the Decedent was earning about $93,000 at the time of the incident.[2] However, Dr. McCoin has admitted that his source for this figure was merely the representation of counsel for Plaintiff[3] and that he did not consider any actual objective evidence of Decedent's income history or earning capacity (i.e., 1099s, tax returns, etc.).[4] In this regard, Defendants submit that the $93,000 figure utilized by McCoin as the starting point for his calculations does not reflect Decedent's actual 1099 revenues for 2009 or an average of Decedents' historical earnings (as an annual inflation-adjusted revenue rate) for the years preceding same.

---

[1]	Clerk's Document No. 1.
[2]	Exhibit A, Report of Kenneth McCoin, p.1.
[3]	Exhibit B, excerpts from McCoin's deposition at p. 40, lns. 4-10.
[4]	Exhibit B, excerpts from McCoin's deposition at p. 12, lns. 5-19; p. 54, lns. 9-17; and p. 85, lns. 18-20.

4.     More particularly, based upon Decedent's 1099 documents herein, Decedent's <u>annualized gross revenue</u> at the time of his death on April 20, 2009, was approximately $69,000[5] and [6] and Decedent's <u>historical gross revenue</u> from 2005 through the date of his death was approximately $73,067 (as an annual inflation-adjusted revenue rate).[7]

5.     Not only does McCoin begin his calculations with an inflated estimate of Decedent's actual earnings, McCoin diverges from the applicable methodology set forth in *Culver II* in the following ways:[8]

- he failed to deduct the appropriate taxes;
- he failed to deduct any expenses; and,
- he miscalculated the personal consumption deduction.

6.     In connection with the foregoing, Defendants note that:

- McCoin admitted that he failed to deduct any Social Security taxes.[9]

- While McCoin admitted that he typically deducts $3,000-5,000 worth of expenses for salaried employees and expressly admitted that a self-employed individual is expected to have more business related expenses than a salaried employee,[10] McCoin deducted $0 expenses from Decedent's gross earnings in calculating Decedent's lost income stream.[11]

- McCoin grossly understated the amount of Decedent's personal consumption. In connection with the foregoing, McCoin claims to have relied on the Bureau of Labor Statistics survey "Consumer Expenditures 2007" as authority for his calculations.[12] However, Defendants submit that

---

[5]   Exhibit C, Dr. James H. Yeager's Report p.3-4 (UBC 2686-2687); Exhibit D, 1099 Forms issued to Daniel Hopper Jr. by Hasten Yacht Repair from 2005 to 2009, specifically year 2009 (HY00001-00005; 00022); and, Exhibit E, excerpts from deposition of Brian Reid Hasten at p. 102, ln 18- 105, ln 4.

[6]   It should be noted that the earnings reflected on Mr. Hopper's 1099 are inflated over Mr. Hopper's actual earnings through the date of his death. More particularly, as evidenced by the referenced deposition testimony, the 1099 earnings figure includes gratuitous payments by Hasten Yacht Repair & Boat Deliveries of the amount Mr. Hopper would have earned through the end of April 2009 as well as an extra $2,000.

[7]   Exhibit C, Dr. James H. Yeager's Report p.3-4 (UBC 2686-2687); and Exhibit F, Joint Tax Returns of Daniel Hopper Jr. and Plaintiff Amber Hopper for the Years 2005-2008.

[8]   Fringe benefits are not discussed as Decedent was self-employed and therefore received no benefits from an employer.

[9]   Exhibit B, excerpts from McCoin's deposition at p. 47, lns. 17-21.

[10]  Exhibit B, excerpts from McCoin's deposition at p. 39, lns. 3-23.

[11]  Exhibit B, excerpts from McCoin's deposition at p. 32-33, lns 24-3; and, p.33, lns 17-21; Exhibit F, Joint Tax Returns of Daniel Hopper Jr. and Plaintiff Amber Hopper for 2005-2008.

[12]  Exhibit B, excerpts from McCoin's deposition at p. 55, lns 2-8.

> ▪ McCoin did not rely on same and further that this is not an appropriate measure for calculating personal consumption.

In sum, McCoin failed to adhere to the methodology set forth in *Culver II*.

7. In the event that Plaintiff attempts to direct the Court to the Decedent's tax returns for 2005, 2006, 2007, or 2008 in support of her claim that Decedent had no deductible business expenses, Defendants submit that those returns are not credible. More particularly, none of the tax returns for years 2005-2008 were timely filed. Rather, all of those returns were created after the Decedent's death (dated and signed by an accountant on December 2009) and then, only after Defendant propounded Requests for Production of same. Furthermore, none of those returns reflect *any* deduction for business expenses. As Dr. Yeager opines in his report, the pendency of this litigation creates an incentive to under-report business expenses in an effort to inflate income and economic valuation of damages.[13] Finally, Mrs. Hopper expressly admitted that she has not *paid any taxes* for the years 2005, 2006, 2007, or 2008.[14]

8. Defendants now file the instant motion and submit that exclusion of McCoin's report and testimony is proper because McCoin relied on nothing more than *ipse dixit* and failed to follow the required formula as set forth in *Culver II*, and therefore his conclusions are unreliable and inadmissible.

## II
## INCORPORATION OF EVIDENCE BY REFERENCE

9. The Motion to Exclude Expert Testimony of Kenneth McCoin is supported by the pleadings on file with the Court and the following evidence, which is attached hereto and incorporated by reference:

---

[13] Exhibit C, Report of Dr. James H. Yeager, p. 2-3 (UBC 2685-2686).
[14] Exhibit G, Plaintiff Amber Hoppers Answers to Defendant's Second Set of Interrogatories, see Second Set of Interrogatories, No. 4

| | |
|---|---|
| Exhibit A | Report of Kenneth McCoin, Ph.D;[15] |
| Exhibit B | Excerpts from the deposition of Kenneth McCoin; |
| Exhibit C | Affidavit, report and curriculum vitae of James H. Yeager, Ph.D; |
| Exhibit D | 1099 Forms issued to Daniel Hopper Jr. by Hasten Yacht Repair & Boat Deliveries from 2005 to 2009 (and supporting affidavit of Brian Hasten); |
| Exhibit E | Excerpts from the deposition of Brian Reid Hasten; |
| Exhibit F | Joint tax returns of Daniel Hopper Jr. and Plaintiff Amber Hopper for 2005-2008;[16] |
| Exhibit G | Plaintiff Amber Hopper's Answers to Defendant's Second Set of Interrogatories; |
| Exhibit H | Affidavit of Christina K Schovajsa. |

## III.
## ARGUMENT AND AUTHORITIES

**A.   Applicable Law on Expert Testimony**

10.   Every expert's testimony must comply with Federal Rule of Evidence 702 which sets forth the minimum threshold requirements for admissibility. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[15]   Defendant's proffer of Kenneth McCoin's report is for the limited purpose of this motion. Defendant expressly reserves and does not waive its objections to same including, but not limited to, hearsay, double hearsay, and cumulative.

[16]   Defendant's proffer of Decedent's tax returns is for the limited purpose of approximating a historical revenue rate. Defendant expressly reserves and does not waive its objections regarding hearsay or credibility.

11. Preliminary questions concerning the admissibility of proposed expert testimony under FRE 702 are determined by the Court. FED. R. EVID. 104(a). The party offering expert testimony has the burden of establishing by a preponderance of the evidence that the expert's testimony is reliable as required by *Daubert*. *Moore v. Ashland Chemicals*, 151 F.3d 269, 276 (5th Cir. 1998).

12. Rule 702 was amended in 2000 to comport with *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 (1993), which charged the district courts with acting as "gatekeepers" in excluding unreliable testimony. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371-72 (5th Cir. 2000). "This so-called 'gate-keeping' function applies to all types of expert testimony, not just 'scientific' testimony." *Id.* at 372. The Supreme Court stated that "the objective of [the gate-keeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert…..employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

13. Further, even a qualified expert, "under Rule 703, must base his opinions on *facts* and data of a type reasonably relied on by experts in the field." *Allen v. Penn. Engineering*, 102 F.3d 194, 196 (5th Cir. 1996) (emphasis added) (holding that "none of the scientific data on which appellants' experts rely furnishes a scientifically valid basis for the[ier] conclusion[s]" when they offered "suggestive" epidemiological evidence, unreliable animal studies that were speculative at best, and inconclusive cell biology). Mere conclusions reached without critical analysis fall short of satisfying this requirement:

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may

>conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding there was no abuse of discretion in excluding the expert testimony because "the studies upon which the experts relied were not sufficient…to support their conclusions that Joiner's exposure to PCB's contributed to his cancer").

**B.     The data that Dr. McCoin relied upon, as well as his conclusions, is nothing more than *ipse dixit*, and accordingly has no evidentiary value.**

14.     The first prong of Rule 702 requires that an expert's testimony be based on sufficient facts or data. Fed. R. Evid. 702. The courts have found that *ipse dixit* is a factor to consider when determining if expert testimony is admissible under Rule 702, and this factor goes towards the sufficiency of facts and data prong. "*Ipse dixit*" (Latin for "he himself said it") means "Something asserted but not proved." *Black's Law Dictionary* 372 (2nd pocket ed. 2001). "The existence of sufficient facts…is in all instances mandatory. 'Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.'" *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)). A district court can not be forced to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec.*, 522 U.S. at 146. There must be sufficient *facts* upon which an expert has relied in forming his conclusions to be admitted; otherwise it is simply an *ipse dixit* of the expert.

**McCoin's "Wage Rate" is Not Factually Sufficient and Amounts to *Ipse Dixit***

15.     In *Hathaway*, plaintiffs designated a law enforcement and firearms expert to testify on the use of deadly force. *Hathaway*, 507 F.3d at 318. Plaintiffs' expert argued that *if* the officer

had been holding his gun in a certain way, *if* the car faced a certain direction, and *if* the driver was seated in a certain manner, then his conclusions were accurate. *Id.* (emphasis added). The Fifth Circuit noted that plaintiffs' expert was primarily relying upon a "host of unsupported conjectures" and failed to offer any specific *factual* support for his assumptions. *Id*. at 318. The Fifth Circuit refused to overturn the exclusion of plaintiffs' expert testimony concluding that he did not utilize *sufficient facts* nor employ a reliable methodology. *Id*. at 319.

16. Just like *Hathaway*, McCoin is saying that *if* the rate Plaintiff's counsel provided him is correct, *if* the rate represented Decedent's net compensation, and *if* Decedent continued to earn this amount, then the $93,000 "wage rate" would be appropriate and his conclusions would be correct.[17] Like *Hathaway*, McCoin's assumptions are factually insufficient and his methodology unreliable.

17. Further, the Eastern District of Texas recently decided a case substantially similar to the present action. In *Young v. Brand Scaffolding Services*, the defendant objected to plaintiff's forensic economist on the grounds that his opinion and methodology were unreliable because they were not based on data obtained from the IRS or Social Security Administration. *Young v. Brand Scaffolding Services*, 2009 WL 4674053 *1 (E.D. Tex. 2009). In his report, plaintiff's expert admitted that he had not received payroll stubs, tax returns, or W-2's, but rather was "informed" of plaintiff's hourly wage. *Id*. at *3. The court noted that plaintiff's expert failed to use any facts or data reflective of plaintiff's actual employment history. *Id*. at *4. Ultimately, the court held that this was "speculative and conjectural at best, lacking any support in the record and belied by [plaintiff's] past work history." *Id*.

---

17     Exhibit B, excerpts from McCoin's deposition p. 24:, lns 6-17; p.42, lns 2-17; and p.45, lns 2-9.

18.     Just like the economist in *Young*, McCoin based his entire computation on a "wage rate" provided to him by Plaintiff's counsel.[18] Moreover, as detailed by Dr. James Yeager, the best evidence of Decedent's earning capacity is his annualized income at the time of death or his average historical income based on tax returns.[19] McCoin was in possession of *actual* documentation of Decedent's income, including: 1099's, unfiled tax returns, and paycheck stubs.[20] However similar to *Young*, McCoin failed to use any of these documents reflective of Decedent's actual employment history. McCoin expressly admitted he did not rely on any of the unfiled tax returns or income data in calculating the loss of support.[21] McCoin chose to ignore the factual data and simply use the (unjustified and arbitrarily determined) "wage rate" provided to him by Plaintiff's counsel.

19.     McCoin's opinions regarding Decedent's lost wages are not admissible. Like *Hathaway*, this is not a case of searching for "sufficient facts and data" upon which McCoin relied, it is a matter of finding **any** facts upon which he relied. Just like the economist in *Young*, McCoin based his entire computation on a "wage rate" provided to him by Plaintiff's counsel.[22] Accordingly, McCoin's calculations and conclusions are complete *ipse dixit*. "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.,* 2009 WL 73874, at *3 (5th Cir. 2009). McCoin's "wage rate" is insufficient because he fails to utilize any objective evidence reflective of Decedent's actual income, and thus his calculations and conclusions are unreliable.

**McCoin's Opinions Regarding Personal Consumption are Not Sufficiently Supported and Amount to *Ipse Dixit***

---

[18]    Exhibit B, excerpts from McCoin's deposition p. 40, lns 2-15.
[19]    Exhibit C, Dr. James H. Yeager's Report p.2-4 (UBC 2685-2687).
[20]    Exhibit B, excerpts from McCoin's deposition, p. 7-8, lns 13-23; attached in exhibit 1.
[21]    Exhibit B, excerpts from McCoin's deposition p. 13, lns. 5-10, p. 54, lns. 9-17.
[22]    Exhibit B, excerpts from McCoin's deposition p. 40, lns 2-15.

20. In *General Electric*, plaintiffs had designated several doctors to testify on the causal link between lung cancer and PCBs, the materials plaintiff handled at work. *General Elec.*, 522 U.S. at 143. The experts presented and relied upon four epidemiological studies that found respectively: (1) no causal link; (2) a statistically insignificant increase in lung cancer death; (3) a statistically significant increase but no mention of PCBs; and (4) a statistically significant increase, but a study group that had been exposed to numerous potential carcinogens. *Id.* at 145-146. The Supreme Court upheld the District Court's expert exclusions because the District Court had found the studies upon which the experts relied were insufficient to support their conclusions. *General Elec.*, 522 U.S. at 146-147. The Court concluded that the experts' opinions were *ipse dixit,* and that there was "simply too great an analytical gap between the data and the opinion[s] proffered." *Id.* at 146.

21. Similar to the studies relied on in *General Electric*, McCoin relies on studies which do not support his conclusions. First, McCoin asserted that personal consumption would equal 17 percent of income or $40 per day on average.[23] Then at deposition, McCoin testified that his personal consumption figures were pulled from a report by the Labor Department entitled the Consumer Expenditures for 2007.[24] Neither of these scenarios represents the appropriate measure for personal consumption. As Dr. Yeager has stated, the appropriate study to use in calculating personal consumption is actually the Bureau of Labor and Statistics ("BLS") Bulletin 1570-2: Revised Equivalence Scale for Estimating Equivalent Incomes or Budget Costs by Family Type because it considers pertinent factors over time, including: age, family size, and family composition.[25] Based on BLS Bulletin 1570-2, Dr. Yeager concluded that the proper deduction for

---

[23] Exhibit A, Report of Kenneth McCoin at p.1.
[24] Exhibit B, excerpts from McCoin's deposition at p. 55, lns 1-10.
[25] Exhibit C, Dr. James H. Yeager's Report at p. 6, ¶ 8 (UBC 2689); Exhibit C, Affidavit of Dr. James H. Yeager, p. 2, ¶ 8.

Decedent's personal consumption would have ranged from a low of 9.46 percent (based on Decedent's actual income and the ages of the Decedent and his spouse and their children at the time of the incident) to a high of 45.76 percent (again, based on income and the ages of Decedent and his spouse toward the end of Decedent's work life expectancy as well as the fact that they would have no other dependents at that time in their lives).[26]

22. Like the experts excluded in *General Electric*, McCoin relied on a study (Consumer Expenditures in 2007) with no connection to personal consumption measures. As demonstrated by Table 39 in Consumer Expenditures in 2007, which is entitled "Income before taxes: Average annual expenditures and characteristics for 4 consumer units," the study pertains to the average expenditures of a household, not what each person in that household actually consumes.[27] Furthermore, the study does not adjust for the ages of the individuals and remains static for a family of four.[28] It is inappropriate for Dr. McCoin to utilize a static study when Decedent's family of four will become a family of two as his children reach maturity and Decedent would have experienced varied consumption levels over time.[29] Because McCoin relies on an inappropriate study, the court has no way to bridge the gap between McCoin's calculations and his conclusions. As the Supreme Court noted in *General Electric*, this is nothing more than *ipse dixit* and leaves "simply too great an analytical gap" for the court to admit such testimony.

23. In sum, McCoin's testimony is unreliable and inadmissible. First, because McCoin's "wage rate" and personal consumption figures are not factually sufficient and amount to *ipse dixit*, his conclusions have no evidentiary value. Secondly, because McCoin has relied on insufficient information, his analysis is not reliable under Rule 702. Lastly, similar to the

---

[26] Exhibit C, Dr. James H. Yeager's Report at p. 6 (UBC 2689).
[27] Exhibit C, Affidavit of James H. Yeager at p.2, ¶ 9.
[28] Exhibit C, Affidavit of James H. Yeager at p.2, ¶ 9.
[29] Exhibit C, Affidavit of James H. Yeager at p.2, ¶ 9.

evidentiary flaw in *Young*, McCoin's conclusions are nothing more than speculative and conjectural, and are therefore not sufficiently tied to the facts to be admissible.

**C.** **McCoin's testimony is not reliable under Rule 702 because his methodology does not meet the Fifth Circuit's standard formula for calculating future lost wage damages as set forth in *Culver II*.**

24. According to the Supreme Court in *Daubert,* a trial court *may* consider four factors when deciding if an expert's methodology is reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593 (1993) (emphasis added). In *Kumho Tire*, the Supreme Court emphasized that the *Daubert* analysis is "flexible," and that "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150.

25. The expert issue currently before the court is just the type the Supreme Court anticipated when they built flexibility into *Daubert*. Lost wage damages do not require scientific determinations, and under *Daubert* and *Kumho Tire*, the trial court would be free to use its own method to determine reliability. However, it is well-settled that future lost wage calculations under Federal Maritime law are to be performed in compliance with *Culver v. Slater Boat Co.,* 722 F.2d 114 (5th Cir. 1983) (commonly known as *Culver II*). This sets forth a clear standard by which to test the reliability of an expert's methodology in calculating future lost wages in Federal Maritime cases.

26. Under *Culver II*, there are four steps for calculating future lost wages:

    (1)    estimating loss of work life resulting from the injury or death;
    (2)    calculating the lost income stream;
    (3)    computing the total damages; and,
    (4)    discounting that amount to its present value.

*Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983). Calculating the lost stream of income is further broken down. "Calculation of the lost income stream begins with the gross earnings of the injured party at the time of the injury. To this amount other income incidental to work, such as fringe benefits, should be added. From it, the fact-finder should subtract amounts the wage earner would have been required to pay, such as income tax and work expenses." *Id*. The Fifth Circuit also noted that when the case involves wrongful death claims, "the maximum loss of benefits to the survivors cannot be determined without also subtracting the living expenses that the worker would have incurred had he continued to live and work." *Id*. n. 3. McCoin has failed to follow the *Culver II* formula in calculating the lost income stream and has further failed to provide factual justifications for his calculations.

27. As detailed in Section I above, McCoin's calculations are fundamentally flawed because he begins with an inflated estimate of gross earnings and compounds that error by failing to:

- deduct the appropriate taxes;
- deduct any expenses; and,
- properly calculate the personal consumption deduction.

McCoin's first error was in utilizing an arbitrary, over-inflated figure provided to him by Plaintiff's counsel (discussed at length above) as the effective "wage rate".[30] McCoin failed to consider either of the proper measures of gross earnings: annualized earnings at the time of death or an average of historical earnings. As noted above, Decedent had <u>annualized gross earnings of approximately $69,000</u> at the time of his death.[31] Furthermore, an average of Decedent's <u>historical earnings</u> for the previous 4.33 years would provide gross earnings of approximately <u>$73,067</u>.[32] Thus, the $93,000

---

[30] Exhibit B, excerpts from McCoin's deposition at p. 40, lns 3-10.
[31] Exhibit C, Dr. James H. Yeager's Report at p. 3 (UBC2686).
[32] Exhibit C, Dr. James H. Yeager's Report at p. 4 (UBC 2687).

"wage rate" does not meet the standards mandated by *Culver II*, causing McCoin's calculations to be unreliable and therefore inadmissible.

28.     In support of Defendant's contention that McCoin failed to deduct all appropriate taxes, Defendant submits that McCoin has failed to deduct the Social Security taxes which Decedent would have been required to pay.  In his report, McCoin claimed that Social Security taxes were deducted from Decedent's earnings,[33] however at the time of deposition McCoin admitted that he failed to deduct *any* amount for Social Security.[34]  McCoin expressly admitted that as a self-employed person, Decedent was exposed to taxes for both Social Security and medicare.[35] By not deducting the required Social Security taxes, McCoin has diverted from the *Culver II* formula and provided an unreliable, over-inflated future lost earnings figure.  More particularly, by simply failing to deduct Social Security taxes, McCoin's calculations are <u>over inflated by approximately $225,472</u>.[36]

29.     McCoin further erred in his calculations of Decedent's personal consumption.  As detailed above, McCoin relied on a study that was insufficient to support his conclusions.  Dr. McCoin's failure to utilize the appropriate measure for personal consumption resulted in an <u>overstatement of $425,209</u>.[37]

30.     McCoin also diverged from *Culver II* by failing to deduct any amount that represented business expenses.  McCoin testified that "net profit" meant revenues <u>minus expenses.</u>[38] McCoin admitted that when someone is self-employed, in all probability, they are going to incur expenses in order to generate their revenue.[39]  McCoin agreed that none of the untimely filed tax

---

[33]     Exhibit A, Report of Kenneth McCoin at p. 1.
[34]     Exhibit B, excerpts from McCoin's deposition at p. 47, lns 1-21.
[35]     Exhibit B, excerpts from McCoin's deposition at p. 49, lns 7-12.
[36]     Exhibit C, Affidavit of Dr. James H. Yeager, p. 2, ¶ 12.
[37]     Exhibit C, Affidavit of Dr. James H. Yeager, p. 2, ¶ 10.
[38]     Exhibit B, excerpts from McCoin's deposition at p. 21, lns. 9-16.
[39]     Exhibit B, excerpts from McCoin's deposition at p. 21, lns. 17-21.

returns from 2005-2008 reflect deductions for expenses.[40] McCoin stated that "typically a person in that circumstance would have expenses that they could claim on their tax return."[41] While McCoin admitted that he typically deducts $3,000-5,000 worth of expenses for salaried employees and expressly admitted that a self employed individual is expected to have more business related expenses than a salaried employee,[42] McCoin deducted $0 expenses from Decedent's gross earnings in calculating Decedent's lost income stream.[43] It is clear that a person who is self-employed will actually incur some amount of expenses and that Decedent did, in fact, incur such expenses. Because McCoin failed to deduct *any* expenses his calculations are further overstated and unreliable.

31. In addition, and as set forth above, there are numerous credibility issues associated with Decedent's tax returns for years 2005-2008. These tax returns were created during the pendency of litigation (dated and signed by an accountant on 12/2009), they reflect no deductions for expenses, they were all filed untimely, and Plaintiff admitted she has yet to pay *any* taxes for any of these years. Decedent's tax returns for years 2005-2008 are not credible or reliable.

32. Although McCoin superficially acknowledged the formula set forth in *Culver II*,[44] he failed to properly utilize that formula in calculating Decedent's lost income stream and Plaintiff's loss of support damages. McCoin failed to follow the Fifth Circuit's standard mandated by *Culver II*: he failed to start with Decedent's true gross earnings, he failed to deduct all applicable taxes, he failed to deduct expenses, and he miscalculated the personal consumption deduction. In sum,

---

[40] Exhibit B, excerpts from McCoin's deposition at p. 34, lns. 20-22.
[41] Exhibit B, excerpts from McCoin's deposition p. 35, lns. 3-5.
[42] Exhibit B, excerpts from McCoin's deposition p. 39, lns. 3-23.
[43] Exhibit B, excerpts from McCoin's deposition at p. 32-33, lns 24-3; p.33, lns 17-21; Exhibit F, Joint Tax Returns of Daniel Hopper and Plaintiff Amber Hopper for 2005-2008.
[44] Exhibit A, Report of Kenneth McCoin, p. 1.

McCoin's conclusions are incorrect, inadmissible, and can not serve as acceptable evidence for proving future lost damages.

### III.
### CONCLUSIONS & PRAYER

33.     Based on the foregoing, it is clear that the testimony of Plaintiff's expert, Kenneth McCoin, does not satisfy the requirements regarding expert testimony set forth in the Federal Rules of Evidence.  A critical examination of the facts and assumptions underlying the opinions Dr. McCoin intends to offer demonstrates that his opinions are based purely on conjecture and speculation and amount to nothing more than *ipse dixit*.  Because he has not demonstrated any reasonable basis for his calculations, Dr. McCoin's opinions are devoid of any evidentiary value, and fail to meet the minimum threshold for admissibility of expert evidence as prescribed by Federal Rules of Evidence 702.  Furthermore, McCoin's failure to apply the *Culver II* formula makes his calculations improper and unreliable. Consequently, the court should grant Southern Princess's Motion to Exclude Dr. McCoin's report and testimony.

WHEREFORE, PREMISES CONSIDERED, Defendant Southern Princess prays that the Court grant the Motion to Exclude the Report and Opinions of Kenneth McCoin in their entirety and any other relief to which they may be justly entitled.

Respectfully submitted,

EASTHAM, WATSON, DALE & FORNEY, L.L.P.

*/s/ Robert L. Klawetter*
Robert L. Klawetter
State Bar No. 11554700
Christina K. Schovajsa
State Bar No. 24002910
The Niels Espersen Building
808 Travis, 20th Floor
Houston, Texas 77002
(713) 225-0905 - Telephone
(713) 225-2907 - Telefacsimile

Attorneys for
*Southern Princess Shipping Company Limited*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing pleading on **May 11, 2010**, electronically, and that a true and correct copy of the foregoing will be served on counsel of record via the Electronic Case Filing System of the United States District Court for the Southern District of Texas, Houston Division, and/or telefax, certified mail, return receipt requested, as enumerated below.

*/s/ Robert L. Klawetter*
Robert L. Klawetter

*VIA THE CM/ECF SYSTEM*
Mr. Wayne D. Collins
Collins & O'Neal, PLLC
6302 Broadway, Suite 210
Pearland, Texas 77581

*VIA THE CM/ECF SYSTEM*
Mr. James Patrick Cooney
Royston, Rayzor, Vickery & Williams, L.L.P.
711 Louisiana Street, Suite 500
Houston, Texas 77002-2716

*VIA THE CM/ECF SYSTEM*
Mr. Jeffrey R. Bale
The Bale Law Firm, PLLC
Kensington I, Suite 200
1600 Highway 6 South
Sugar Land, Texas 77478

*VIA THE CM/ECF SYSTEM*
Mr. G. P. Hardy, III
Hardy McKenzie
3701 Kirby Drive, Suite 1212
Houston, Texas 77098

*VIA THE CM/ECF SYSTEM* Mr.
C. Douglas Wheat
Wheat, Opermann & Meeks, P.C.
1722 Heights Boulevard
Houston, Texas 77008