IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMBER C. HOPPER, Individually; As Personal Representative of the Estate of Daniel Hopper, II, Deceased; and As Next Friend for Minor Children DH and MH, | § § § § § | |
| Plaintiff, | § § | |
| | § | |
| DANIEL RAY HOPPER, SR. and SHERYL HOPPER, | § § | |
| Intervenor Plaintiffs, | § § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1223 |
| | § | |
| M/V UBC SINGAPORE and SOUTHERN PRINCESS SHIPPING COMPANY LIMITED, | § § § | |
| Defendants/Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| BRIAN HASTEN, Individually and d/b/a Hasten Yacht Repair & Boat Deliveries, and TEXAS MOORING, L.L.C., | § § § § | |
| Third-Party Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Exclude Expert Testimony of

Captain Karl Haupt [Doc. # 72] filed by Southern Princess Shipping Company

Limited ("Southern Princess") and M/V UBC SINGAPORE (the "Vessel")

(collectively, "Vessel Defendants"), to which Plaintiff Amber C. Hopper filed a Response [Doc. # 98], and the Vessel Defendants filed a Reply [Doc. # 104]. Also pending is the Vessel Defendants' Motion to Limit the Testimony of Vincent DiMaio, M.D. [Doc. # 73], to which Plaintiff filed a Response [Doc. # 100], and the Vessel Defendants filed a Reply [Doc. # 107]. Also pending is the Vessel Defendants' Motion to Exclude Expert Testimony of Kenneth McCoin, Ph.D. [Doc. # 74], to which Plaintiff filed a Response [Doc. # 97], and the Vessel Defendants filed Reply [Doc. # 103]. Also pending is the Vessel Defendants' Motion to Exclude Expert Testimony of Edward Fritsch [Doc. # 78], to which Plaintiff filed a Response [Doc. # 99], and the Vessel Defendants filed a Reply [Doc. # 109].

The Court has carefully reviewed the full record in this case. Based on this review and the application of governing legal authorities, the Court **denies** the Vessel Defendants' Motion as to Captain Karl Haupt [Doc. # 72] and **grants** the Vessel Defendants' Motions as to Vincent DiMaio [Doc. # 73], Kenneth McCoin [Doc. # 74], and Edward Fritsch [Doc. # 78].

## I.   BACKGROUND

Plaintiff's husband, Daniel Hopper II ("Hopper"), was an independent contractor working as a boat mechanic for Brian Hasten d/b/a Hasten Yacht Repair & Boat Deliveries ("Hasten"), performing work for Texas Mooring, L.L.C. ("Texas

Mooring").  On April 20, 2009, a Texas Mooring boat, "TXM-16," had mechanical problems and was left by its operator at a facility approximately eleven miles up the Houston Ship Channel from Texas Mooring's facility.  The TXM-16 is a shallow 20' aluminum boat.

At approximately 8:00 p.m. that evening, Hopper took another Texas Mooring boat to the TXM-16, exchanged it for the TXM-16, and began driving the TXM-16 to Texas Mooring's facility.  After travelling approximately two miles, the propeller of the TXM-16 became entangled with a mooring line.  The TXM-16 became disabled and drifted into the navigable section of the Houston Ship Channel and into the path of the Vessel, which is a 563' long, 88.6' wide, oceangoing bulk cargo carrier.

Hopper perceived that he was in the path of the Vessel and jumped out of the TXM-16 into the Houston Ship Channel.  He was not wearing a life preserver at the time, and he drowned.  The autopsy revealed no evidence of blunt force trauma to Hopper's body.  Toxicology tests performed in connection with the autopsy indicated the existence of high levels of alcohol and prescription drugs in Hopper's system at the time of his death.

Plaintiff filed this lawsuit against the Vessel Defendants and, approximately three months later, Hopper's parents intervened as Plaintiffs.  The Vessel Defendants filed a Third Party Complaint [Doc. # 16] against Hasten and Texas Mooring.

The Vessel Defendants filed motions seeking to exclude all or a part of the anticipated testimony by Captain Karl Haupt, Vincent DiMaio, Kenneth McCoin, and Edward Fritsch.  The motions have been fully briefed and are ripe for decision.

## II.   LEGAL STANDARD FOR MOTIONS TO EXCLUDE TESTIMONY

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury.  *See, e.g., Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting FED. R. EVID. 702).  "A party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* (citing *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)). The trial courts act as "gate-keepers," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243-44 (5th Cir. 2002); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)).  Guiding factors to consider include (1) whether the theory or technique underlying the expert's opinion has been tested; (2) whether it has been subjected to peer review and publication; (3) whether it has any known rate of error and standards for controlling

such error; and (4) whether the theory or technique is generally accepted within the relevant expert community. *Daubert*, 509 U.S. at 593-94; *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). The district court's ultimate responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

The Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157; *Burleson v. Tex. Dept. of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004); *Cahn v. Coggins*, 294 F. App'x 934, 939 (5th Cir. Oct. 2, 2008). Where the challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). In such cases, there is "simply too great an analytical gap between the data and the opinion proffered." *Chambers v. Exxon Corp.*, 247 F.3d 240, *2 (5th Cir. Jan. 5, 2001) (quoting *Gen. Elec. Co. v. Joiner*, 422 U.S. 136, 146 (1997)).

## III.   ANALYSIS

### A.   Captain Karl Haupt

Plaintiff has designated Captain Karl Haupt as an expert to testify that the Vessel could have "taken evasive action and avoided collision with the line boat." Haupt has experience as a captain and ship's officer in the United States Merchant Marine, as an observer on foreign flag vessels, and as a lecturer in Texas A&M University's Maritime Transportation Department.  The Vessel Defendants do not challenge Haupt's credentials.

Haupt's opinion is based on his assumption that the TXM-16 was adrift in the center of the Houston Ship Channel and was involved in a collision with the Vessel. Specifically, Haupt opines that the Vessel could have taken evasive action if the Vessel and the TXM-16 were in certain locations and the TXM-16 was observed by someone on the Vessel at least one ship's length before any collision occurred.  The Vessel Defendants challenge Haupt's opinion because he admitted he does not know the relative locations of the Vessel and the TXM-16 because he relied on a video that he had trouble viewing because of his recent eye surgery.[1]

---

[1]     The Vessel Defendants also argue that Haupt's written report is subject to hearsay and other evidentiary objections.  The Court's practice is not to admit an expert's written report into evidence.  Instead, the evidence will be the expert's testimony at trial.

Plaintiff responds that Haupt's opinion is based on testimony that will be provided at trial from eyewitnesses. Rule 703 of the Federal Rules of Evidence permits an expert to base his opinions on facts or data, even if inadmissible hearsay, if of the type "reasonably relied upon by experts in the particular field in forming opinions . . .." FED. R. EVID. 703; *United States v. Dixon*, 413 F.3d 520, 524 (5th Cir. 2005). Here, it is undisputed that Haupt has no personal knowledge regarding the relative locations of the Vessel and the TXM-16 at relevant times on April 20, 2009. Pursuant to Rule 703, however, Haupt is entitled to rely on information provided to him in forming his opinion, provided there is an evidentiary basis for that information.

The Vessel Defendants' challenges to Haupt's opinions relate more to the weight to be given the expert's testimony than to its admissibility. *See Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996). Consequently, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. The Court concludes that Haupt will be permitted to testify regarding his opinion that the Vessel could have – under certain circumstances – taken evasive action to avoid a collision with the TXM-16. Prior to offering that testimony, however, Plaintiff must present evidence regarding a

"collision" between the Vessel and the TXM-16 and the relative locations of the

Vessel and the TXM-16 at the time of any such collision.

## B.    <u>Vincent DiMaio, M.D.</u>

Plaintiff designated Vincent DiMaio, a former pathologist with the Bexar

County Medical Examiner's Office, to provide expert testimony that the results of the

toxicology tests were meaningless because the body was in a state of decomposition.[2]

Specifically, DiMaio states that the results are meaningless because the samples tested

(decomposition fluid, bile, and liver tissue) cannot be used for determining blood

alcohol ("BAC") and drug levels in decomposed bodies.

The Vessel Defendants challenge DiMaio's opinion regarding the toxicology

results as unsupported by – and indeed refuted by – reported scholarly or scientific

knowledge.  Indeed, as the Vessel Defendants note in their motion, DiMaio's expert

report cites no scientific or medical publications to support the challenged opinion.

During his deposition, however, DiMaio referred to the "Kugelberg article" and

a "Zumwalt study" that is included in DiMaio's textbook, *Forensic Pathology*.  The

Kugelberg article expressly acknowledges that bile and liver tissue are acceptable

sources for determining BAC, and recognizes that pathologists routinely use

---

[2]    Plaintiff also designated DiMaio as an expert to provide testimony regarding cause
of death and pre-death pain and suffering.  DiMaio's opinions on these subjects are
not challenged.

decomposition fluid for such purposes.  The Zumwalt study does not support DiMaio,

as the study used and relied upon putrefied chest fluid for determining BAC.  DiMaio

cited no other scientific or medical publications as supporting his opinion.[3]  From this

inability to cite supporting scientific or medical information, the Court concludes that

DiMaio's challenged opinions are not generally accepted in the pathology community.

The opinion regarding the toxicology reports is excluded as insufficiently reliable.

## C.    Kenneth McCoin, Ph.D.

Plaintiff designated Kenneth McCoin as an economic expert to offer opinion

testimony regarding Plaintiff's damages.  The Vessel Defendants challenge McCoin's

opinions regarding Hopper's future lost wages.

In the Fifth Circuit, future lost wages in maritime cases are calculated using a

four-step process:  (1) estimate the expected remaining work-life of the plaintiff;

(2) calculate the lost income stream; (3) compute the total amount of damages; and (4)

discount that total amount to its present value.  *Culver v. Slater Boat Co.,* 722 F.2d

114, 117 (5th Cir. 1983) (*en banc*); *Baham v. Nabors Drilling USA*, 2010 WL

2629815, *12 (W.D. La. June 28, 2010).  "Calculation of the lost income stream

---

[3]     In the Response [Doc. # 100], Plaintiff cites several published reports.  None of the
reports was relied upon by DiMaio in reaching his opinion in this case and, more
importantly, none of the articles supports DiMaio's opinion regarding the toxicology
reports.

begins with the gross earnings of the injured party at the time of the injury." *Culver*,

722 F.2d at 117.  From the gross earnings combined with other income incidental to

the injured party's work, "the fact-finder should subtract amounts the wage earner

would have been required to pay, such as income tax and work expenses." *Id.*  Where

the injury results in the wage earner's death, "the maximum loss of benefits to the

survivors cannot be determined without also subtracting the living expenses that the

worker would have incurred had he continued to live and work." *Id.* at 117 n.3.  The

record establishes that McCoin, while acknowledging the *Culver* procedure, failed to

comply with it in any meaningful way.

McCoin began his analysis with $93,000.00 as Hopper's gross earnings at the

time of his death in April 2009.  His only source for this figure was the representation

of Plaintiff's counsel.  The Court finds *Young v. Brand Scaffold Servs.,* 2009 WL

4674053 (E.D. Tex. Mar. 16, 2009) (Crone, J.), to be relevant and persuasive.  In

*Young*, the proffered economic expert did not receive payroll records but, instead,

based his lost earning capacity calculation on what he had been "informed" was the

plaintiff's work history.  *Id.* at *3.  In this case, McCoin's "methodology" is more

troublesome because, unlike the expert in *Young*, McCoin had the relevant payroll

information, including 1099 forms, pay stubs, and unfiled tax returns,[4] but he elected

not to consider this information.  Had he reviewed the actual payroll records, he could

have determined that Hopper's annualized gross revenue for 2009 was $69,000.

Alternatively, he could have determined that Hopper's historical annual gross revenue

was $73,067.  Instead, McCoin chose to accept the figure provided by Plaintiff's

counsel.  This is clearly not "the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field."  *See Kumho Tire*, 526 at 151.

McCoin failed to deduct all the taxes that Hopper would have been required to

pay.   Although McCoin issued an untimely revision to his report, deducting

$299,039.00 in Social Security taxes he initially failed to deduct, the original failure

to deduct all applicable taxes reflects the lack of "intellectual rigor" in McCoin's

analysis in this case.

McCoin also failed to make any deductions for business expenses,

notwithstanding his opinion that Hopper would have been expected to incur such

business expenses.  Not only is this omission an indication of McCoin's failure to

utilize the same intellectual rigor in this case as would generally be used by an

economic expert, it is a failure (without adequate explanation) to utilize McCoin's

---

[4]      The tax returns for 2005-2008 were neither prepared nor filed until after Hopper's
death in April 2009.

own standard procedures.   McCoin testified that he typically deducts between $3,000.00 and $5,000.00 as business expenses for a salaried employee and admitted that a self-employed individual, such as Hopper, would be expected to have more business expenses than a salaried employee. Notwithstanding the standards of *Culver*, the economic expert community, and McCoin himself, McCoin elected in this case not to deduct any business expenses.

In calculating the living expenses that Hopper would have incurred had he continued to live and work, also referred to as the personal consumption deduction, McCoin relied on a Department of Labor report entitled "Consumer Expenditures for 2007." There is no evidence that this report is routinely used or generally accepted by economic experts for calculating a personal consumption deduction. Indeed, the report is a survey of household expenses for a year, not an analysis of the amount any individual would be expected to consume over an extended period of years.

McCoin's methodology for calculating Plaintiff's future economic damages is woefully inadequate and fails to comply with the *Culver* procedure.   Rather than review and base his calculation on available payroll records, McCoin adopted Plaintiff's attorney's representation of Hopper's earnings at the time of his death. McCoin failed to deduct any amounts for taxes and business expenses.  He failed to support his use of the Consumer Expenditures for 2007 as the basis for his calculation

of the personal consumption deduction.  McCoin's opinion regarding future economic damages is flawed, lacking in intellectual rigor, and unreliable.  The motion to exclude his testimony is granted.

### D.    Edward Fritsch

Plaintiff designated Edward Fritsch as an engineering expert.  Fritsch's opinion is that Hopper "impacted the ship's hull at a speed approximately equal to the ship's forward speed of 4 knots (6.8 feet per second)" even though the "impact with the UBC SINGAPORE caused no apparent blunt impact injury."  *See* Fritsch Report dated December 30, 2009 ("Fritsch Report"), Exh. A to Motion to Exclude [Doc. # 78], p.4. It is also Fritsch's opinion that "a downward water flow was present with sufficient velocity to pull a swimmer under, even if the swimmer was wearing a PFD" (personal flotation device).  *Id.* at 5.  Fritsch also states the opinion that the PFD on the TXM-16 was not the type that would have prevented Hopper from drowning if he was rendered unconscious "from hitting his head when he impacted the ship" or from some other cause.  *Id.*  The Vessel Defendants seek exclusion of all Fritsch's opinions and related testimony at trial.

Fritsch has a Bachelor of Science degree in Mechanical Engineering and a Master of Mechanical Engineering degree.  He lists his "Areas of Expertise" as Experimental Measurements; Mechanical Systems; Machine Dynamics and Structural

Analysis; Failure Investigation; Pressure Vessels, Pumps and Piping; and Welding. Fritsch's resume and report do not indicate any specialized education, training, experience, or knowledge in the areas of hydrodynamics or maritime accident reconstruction.   The court should refuse to allow a witness to present opinion testimony in a particular field or on a given subject if the witness is not qualified in that particular field or subject matter.  *Huss*, 571 F.3d at 452 (citing *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999)).  An expert may not present opinion testimony that goes beyond the scope and extent of his expertise.  *See Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).  The Court concludes that Fritsch's background and expertise in general mechanical engineering does not establish his expertise in the areas necessary to support his opinions in this case – hydrodynamics and maritime accident reconstruction.

In addition to, or perhaps because of, Fritsch's lack of expertise in the relevant areas, his opinions lack adequate indicia of reliability.  This lack of reliability is in part because the opinions are based on assumptions that are refuted without contradiction by the evidence in the case.  For example, Fritsch's opinion that Hopper "impacted the ship's hull" at a speed of approximately 6.8 feet per second is refuted by the absence of any blunt trauma to the body, including the absence of any cuts, scratches, bruises, abrasions or broken bones.  Indeed, Fritsch's opinion is contrary to the opinion of

every designated medical expert in this case, including Plaintiff's own expert Dr. DiMaio.

Fritsch's opinion that Hopper would have drowned even if he had been wearing a PFD is refuted by Fritsch's own deposition testimony that, if Hopper were conscious, a PFD would have kept him from drowning.  *See* Fritsch Depo., Exh. B to Motion to Exclude [Doc. # 78], p. 251.  Fritsch conceded that he has no evidence that Hopper was unconscious.  *See id.*, pp. 248, 251.

Fritsch's opinion that the downward water force would exceed the buoyancy of the PFD is based on "an idealized model of a passive body."  There is no evidence in the record that Hopper was "passive" after jumping out of the TXM-16 into the Houston Ship Channel.  Fritsch assumed that Hopper was the size of an average male in the 50th percentile – 5'8" tall and 166 pounds.  It is undisputed that Hopper was 6'3" tall and weighed approximately 231 pounds.

Fritsch's opinions assume that Hopper was struck by the Vessel and sucked under by a "downward water flow."  As is noted above, the uncontroverted medical evidence in the record establishes that Hopper was not hit by the Vessel. Additionally, Fritsch conceded during his deposition that "a positive pressure field moves ahead of a ship" and that the movement of the Vessel caused the TXM-16 to move *away from* the Vessel, not underneath it.  *See* Fritsch Depo., pp. 167-68.

Fritsch's opinions – particularly those regarding the "downward water flow" or "zone of suction," and its effect on Hopper after he jumped from the TXM-16 into the Houston Ship Channel, have not been tested or otherwise subjected to peer review. There is no evidence that these opinions are generally accepted within the hydrodynamics and maritime accident reconstruction fields. Because Fritsch's opinions have not been adequately supported, are not shown to be recognized in the relevant scientific communities, and are based on clearly erroneous assumptions, Fritsch's challenged opinions are not sufficiently reliable to assist the trier of fact. The Motion to Exclude Fritsch's opinions is granted.

## IV.   CONCLUSION AND ORDER

Captain Karl Haupt will be permitted to testify regarding the opinions expressed in his report *only after* Plaintiff has presented evidence at trial that supports Haupt's assumptions regarding a collision and the relative locations of the Vessel and the TXM-16 at the time of any collision. Vincent DiMaio's opinions regarding the toxicology results are excluded as not supported by published scientific or medical information and, therefore, lacking sufficient reliability. Kenneth McCoin's opinions regarding Hopper's lost wages are excluded because they are not based on generally accepted methodology, including Fifth Circuit requirements. Edward Fritsch's opinions regarding the effect of Hopper not wearing a life preserver are excluded

because they involve an area in which Fritsch does not have expertise, because the

opinions are not supported by reliable principles and methods, and because they are

based on demonstrably incorrect assumptions.  Accordingly, it is hereby

**ORDERED** that the Vessel Defendants' Motions to Exclude Testimony are

**DENIED** as to Captain Karl Haupt [Doc. # 72] and **GRANTED** as to Vincent DiMaio

[Doc. # 73], Kenneth McCoin [Doc. # 74], and Edward Fritsch [Doc. # 78].

SIGNED at Houston, Texas, this **14th** day of **July, 2010**.

_____
Nancy F. Atlas
United States District Judge