IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMBER C. HOPPER, Individually; As Personal Representative of the Estate of Daniel Hopper, II, Deceased; and As Next Friend for Minor Children DH and MH,<br>　　Plaintiff,<br><br>DANIEL RAY HOPPER, SR. and SHERYL HOPPER,<br>　　Intervenor Plaintiffs,<br><br>v.<br><br>M/V UBC SINGAPORE and SOUTHERN PRINCESS SHIPPING COMPANY LIMITED,<br>　　Defendants/Third-Party Plaintiffs,<br><br>v.<br><br>BRIAN HASTEN, Individually and d/b/a Hasten Yacht Repair & Boat Deliveries, and TEXAS MOORING, L.L.C.,<br>　　Third-Party Defendants. | CIVIL ACTION NO. H-09-1223 |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Summary Judgment Against Intervenors Daniel Ray Hopper, Sr. and Sheryl Hopper [Doc. # 55] filed by Southern Princess Shipping Company Limited and the M/V UBC SINGAPORE (the "Vessel")

(collectively, the "Vessel Defendants"), to which Intervenors filed a Response [Doc. # 67], and the Vessel Defendants filed a Reply [Doc. # 68]. Also pending is the Motion for Summary Judgment ("Hasten's Motion") [Doc. # 75] filed by Brian Hasten, to which Plaintiff Amber C. Hopper filed a Response [Doc. # 95], and Hasten filed a Reply [Doc. # 105].[1] Having reviewed the full record and applied governing legal authorities, the Court **grants** both Motions.

## I.      BACKGROUND

Plaintiff's husband, Daniel Hopper II ("Hopper"), was an independent contractor working as a boat mechanic for Brian Hasten d/b/a Hasten Yacht Repair & Boat Deliveries ("Hasten"), performing work for Texas Mooring, L.L.C. ("Texas Mooring"). On April 20, 2009, a Texas Mooring line handling boat, "TXM-16," had mechanical problems and was left by its operator at a facility approximately eleven miles up the Houston Ship Channel from Texas Mooring's facility. The TXM-16 is a shallow 20' aluminum boat. At approximately 8:00 p.m. that evening, Hopper took another Texas Mooring boat to the TXM-16, exchanged it for the TXM-16, and began navigating the TXM-16 to Texas Mooring's facility. After travelling approximately

---

[1] Also pending are the Motions for Partial Summary Judgment filed by the Vessel [Doc. # 71] and Texas Mooring, L.L.C. [Doc. # 77] seeking partial summary judgment on Plaintiff's state law claims. In her Response, Plaintiff maintains that she is not asserting state law claims against the Vessel or Texas Mooring, L.L.C. and, therefore, the Motions for Partial Summary Judgment are **moot**.

two miles, the propeller of the TXM-16 became entangled with a mooring line. The TXM-16 became disabled and drifted into the navigable section of the Houston Ship Channel and into the path of the Vessel, which is a 563' long, 88.6' wide, oceangoing bulk cargo carrier.

Hopper perceived that he was in the path of the Vessel and jumped out of the TXM-16 into the Houston Ship Channel. He was not wearing a life preserver at the time, and he drowned.

Plaintiff filed this lawsuit against the Vessel Defendants and, approximately three months later, Hopper's parents intervened as Plaintiffs. The Vessel Defendants filed a Third Party Complaint [Doc. # 16] against Hasten and Texas Mooring.

After a full opportunity to conduct discovery, the Vessel Defendants filed a Motion for Summary Judgment on the Intervenor parents' claim, and Hasten filed a Motion for Summary Judgment on all claims against him. The motions have been fully briefed and are ripe for decision.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

### III.    ANALYSIS

####    A.    Vessel Defendants' Motion for Summary Judgment

Hopper's parents, Intervenors in this case, seek to recover damages for loss of companionship and society, pecuniary loss, and punitive damages. The Vessel Defendants seek summary judgment because Intervenors were not financially dependent on Hopper and, therefore, cannot recover for loss of companionship and society.[2] Intervenors argue that the "law is unsettled" and that "the best course would be to allow the parents['] claims to [be] submitted to trial" and then the Court could decide legal and factual issues later. The Court rejects Intervenors' argument that the "best course" is to ignore the pending motion and defer deciding the issues presented until after trial.

With reference to Plaintiff's argument that the law is unsettled, Intervenors rely on *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996). In the *Yamaha* case, however, a twelve-year-old girl (a nonseaman) was killed in a jet ski (a recreational vehicle) accident on navigable territorial waters. There was no injured

---

[2]    The Vessel Defendants also seek summary judgment on Intervenors' claims for pecuniary loss and for punitive damages because there is no evidence of any pecuniary loss suffered by Intervenors and no factual basis for an award of punitive damages to Intervenors. Intervenors in their Response provided neither argument nor evidence in opposition to this aspect of the Vessel Defendants' Motion. As a result, absent evidence that raises a genuine issue of material fact, the Vessel Defendants are entitled to summary judgment on these two elements of Intervenors' damages claim.

maritime worker in the *Yamaha* case and, therefore, there was no issue regarding the application of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). The case before this Court, however, involves the death ***of a maritime worker*** in connection with an incident involving only non-recreational vessels. As a result, the *Yamaha* decision does not govern or apply to the case at bar.

In 2007, more than ten years after the *Yamaha* decision, the Fifth Circuit held that the "present state of the law" is that survivors of a deceased worker covered by the LHWCA who were not financially dependent on the deceased may not recover for loss of companionship and society when the death occurs in state waters. *In re Am. River Transp. Co.*, 490 F.3d 351, 355-56 (5th Cir. 2007). It is undisputed in this case that Intervenors were not financially dependent on Hopper, and that Hopper's death occurred in state navigable waters. Consequently, the dispositive issue is whether Hopper was covered by the LHWCA and thus whether Intervenors' claim for damages for loss of companionship and society is barred by the holding in *American River*.

The LHWCA provides a system of compensation to employees whose injury or death occurs on the navigable waters of the United States. *See* 33 U.S.C. § 903(a). The statute defines "employee" to include "any person engaged in maritime employment, including . . . any harbor-worker including a ship repairman . . . ." 33 U.S.C. § 902(3). The statute does not limit the definition of "employee" to include

only those who are hired as an employee formally, but instead extends the definition to "any person" who is engaged in maritime employment. The LHWCA does not base "employee" status on the formalities of the employment relationship, but instead focuses on the work being performed. For example, in *American River*, the deceased was a prison inmate employed to perform barge-cleaning services for American River Transportation Company in connection with a work-release program. *See Am. River*, 490 F.3d at 352. The LHWCA applies to any injured maritime worker if his injury occurs on or within an area adjoining the navigable waters of the United States (the "situs" test) and the nature of the work being performed at the time of the injury was maritime in nature (the "status" test). *McLaurin v. Noble Drilling (U.S.), Inc.*, 529 F.3d 285, 289 (5th Cir. 2008). In this case, it is undisputed that Hopper's death, which occurred in the Houston Ship Channel, satisfies the "situs" test.

The undisputed evidence establishes that, at the time of the incident, Hopper was performing work that was maritime in nature. Hopper was a boat repairman[3] who was moving a non-recreational vessel along the Houston Ship Channel in the course of his employment. There is no evidence that Hopper was performing any other work at the time of the incident.

---

[3]  The LHWCA contains no exemption for workers who repair "boats" as opposed to "ships." *Miss. Coast Marine, Inc. v. Bosarge*, 637 F.2d 994, 998 (5th Cir. 1981).

Intervenors note that there is an exception from coverage under the LHWCA for persons "engaged by a master to load or unload or repair any small vessel under eighteen tons net." *See* 33 U.S.C. § 902(3)(H). The Fifth Circuit has interpreted this exception as containing two separate elements and requiring that both be satisfied before the exception applies – the vessel must be under eighteen tons net ***and*** the worker must have been "engaged by the master." *Miss. Coast Marine, Inc. v. Bosarge*, 637 F.2d 994, 998 (5th Cir. 1981). There is no evidence that Hopper was "engaged by the master" of the TXM-16 on the night of his death. The uncontroverted evidence is, instead, that Hopper was contacted by a Texas Mooring dispatcher and told that the TXM-16 had mechanical problems.

The uncontroverted evidence in this record establishes that, at the time of the incident at issue, Hopper was performing work that satisfied both the "situs" test and the "status" test. Consequently, Hopper was a person engaged in maritime employment and satisfied the definition of "employee" for purposes of the LHWCA.[4] Because his parents were not financially dependent on him at the time of his death, Intervenors cannot recover damages for loss of companionship and society. The Vessel Defendants are entitled to summary judgment on Intervenors' claims.

---

[4] Indeed, as noted in *Bosarge*, it is "difficult to conceive of an activity more fundamental to maritime employment then the . . . repair of navigable vessels." *Bosarge*, 637 F.2d at 998.

**B.**   **Hasten's Motion for Summary Judgment**

The LHWCA provides that an employer is required to secure the payment to its employees of the LHWCA compensation. *See* 33 U.S.C. § 904(a). An employer's liability under the LHWCA is exclusive and "in place of all other liability of such employer" unless the employer "fails to secure payment of compensation as required" by the LHWCA. 33 U.S.C. § 905(a). A subcontractor shall not be deemed to have failed to secure payment of LHWCA compensation "if the contractor has provided insurance for such compensation for the benefit of the subcontractor." 33 U.S.C. § 904(a).

In this case, Texas Mooring contracted with Hasten for boat repair services. Texas Mooring has LHWCA insurance through a Marine General Liability Policy (the "Policy") issued by Signal Mutual Indemnity Association ("Signal Mutual"). *See* Travelers Insurance Policy, Exh. 3 to Reply [Doc. # 105]. The Policy provides coverage for Texas Mooring and its employees, defined to include a "leased worker" or a "borrowed servant." *See* Policy, ¶¶ 11(2), 20(11). Signal Mutual, as Texas Mooring's LHWCA insurance carrier, sent the LHWCA compensation to Plaintiff, who refused to accept it.[5] The President of Texas Mooring has testified that Texas

---

[5]   Signal Mutual has filed a Petition in Intervention [Doc. # 42], seeking to recover "funeral benefits" it paid to Plaintiff and any death benefits it may be obligated to pay in the future.

Mooring provided LHWCA insurance for "Hasten Yacht Repair and its employees." Deposition of Francis R. Sharp, Exh. 2 to Reply, p. 3 (as numbered in exhibit). Sharp further testified that there was "never a situation where Mr. Hasten was employing people without having coverage" that was "available for the benefit of Hasten and its employees." *Id.* at 4. Plaintiff has presented no evidence that Texas Mooring failed to provide LHWCA insurance for Hasten's employees. Indeed, it is undisputed and bears repeating that Texas Mooring's insurer, Signal Mutual, proffered payment of the LHWCA compensation to Plaintiff. Plaintiff has not raised a genuine fact question regarding Texas Mooring's provision of LHWCA insurance for Hasten and its employees such that Hasten is entitled to the LHWCA's exclusive remedy provision in § 905(a).

Plaintiff argues that Hopper was an independent contractor and not an employee of Hasten.[6] In determining whether a worker is an employee of an employer under the LHWCA, the Fifth Circuit examines two aspects of the worker's relationship with the alleged employer. *See Prestenbach v. Global Int'l Marine Inc.*, 244 F. App'x 557, 559 (5th Cir. July 12, 2007) (citing *Oilfield Safety and Mach. Specialties, Inc. v.*

---

[6] As is discussed in connection with the Vessel Defendants' Motion for Summary Judgment on Intervenors' claims, Hopper, although characterized as an independent contractor, satisfied the statutory definition of an "employee" under the LHWCA. The remaining issue is whether Hopper qualified as *Hasten's* employee for purposes of LHWCA insurance coverage under the Policy issued to Texas Mooring.

*Harman Unlimited, Inc.*, 625 F.2d 1248, 1253 (5th Cir. 1980)). The first aspect is the nature of the deceased's work, focusing on the "skill required to do the work, the degree to which the work constitutes a separate calling or enterprise, and the extent to which that work might be expected to carry its own accident burden." *Id.* at 559-60. In this case, the evidence is uncontradicted that the skill required for Hopper to perform his work was the same as that required of any other boat repairman working for Hasten, and Hopper's work did not constitute an enterprise separate from the work generally performed by other Hasten workers. The Court concludes that this factor indicates that Hopper qualified as an employee of Hasten for purposes of the LHWCA.

The second aspect to be considered is the relation of Hopper's work to Hasten's regular business, focusing on whether Hopper's work was a regular part of Hasten's regular work, whether Hopper's work was continuous or intermittent, and whether the duration of Hopper's work for Hasten is sufficient "to amount to the hiring or continuing services as distinguished from the contracting for the completion of a particular job." *Id.* at 360. As is noted above, the evidence is uncontroverted that Hopper's work as a boat repairman was the same as the boat repair work regularly provided by Hasten. It is undisputed that Hopper worked for Hasten for four or five years before his death, and worked exclusively for Hasten from 2006 until his death

in 2009. Hopper was provided an Internal Revenue Service Form 1099 rather than a W-2 for federal tax purposes, but it is undisputed that he was paid a salary on a semi-monthly basis and was not paid separately for any particular job. Consideration of this aspect also indicates that Hopper qualified as an employee of Hasten for purposes of the LHWCA.

The Court concludes from the undisputed record that Hopper qualified as Hasten's employee for purposes of the LHWCA. Consequently, Texas Mooring's LHWCA insurance coverage for Hasten's employees – including Hopper – precludes Plaintiff's claim against Hasten in this lawsuit. Hasten's Motion for Summary Judgment is granted.

### IV.    CONCLUSION AND ORDER

Hopper qualified as an employee under the LHWCA at the time of his death and, therefore, his non-dependent parents are not entitled to recover damages for loss of companionship and society. Intervenors have not presented evidence of pecuniary loss and have not presented evidence to provide a factual basis for punitive damages.

Hopper qualified as an employee of Hasten under the LHWCA, and Texas Mooring has admitted that Hasten's employees were covered by the Texas Mooring LHWCA insurance policy issued by Signal Mutual. Indeed, Signal Mutual has

proffered to Plaintiff the LHWCA compensation owed under the Texas Mooring Policy. Based on the foregoing, it is hereby

**ORDERED** that the Vessel Defendants' Motion for Summary Judgment on Intervenors' Claims [Doc. # 55] and Hasten's Motion for Summary Judgment [Doc. # 75] are **GRANTED**. It is further

**ORDERED** that the Vessel Defendants' Motion for Partial Summary Judgment [Doc. # 71] and Texas Mooring's Motion for Partial Summary Judgment [Doc. # 77] are **DENIED AS MOOT** based on Plaintiff's representation that she is not asserting any state law claims.

SIGNED at Houston, Texas, this 20th day of **July, 2010**.

*/s/ Nancy F. Atlas*
Nancy F. Atlas
United States District Judge